1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   OUTA SAECHAO,[1]

11            Petitioner,              No. 2:12-cv-0495 KJN P

12        vs.

13   B. GOWER,[2]

14            Respondent.             ORDER

15   _____/

16   I.  Introduction

17            Petitioner is a state prisoner, proceeding without counsel, with an application for a

18   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Both parties consented to proceed before

19   the undersigned for all purposes.  See 28 U.S.C. § 636(c).

20            Petitioner challenges his 2009 conviction on charges of petty theft with a prior, a

21   prior serious felony conviction, and a prior prison term.  Petitioner was sentenced to a

22   determinate term of seven years in state prison on December 14, 2009.  Petitioner claims the trial

23

24        [1]  As noted by respondent, the caption of the petition contains a typographical misspelling
     of petitioner's last name, as confirmed by the briefing.  The court uses the correct spelling.

25

26        [2]  B. Gower, current warden of the California Correctional Center, is substituted as
     respondent.  See Stanley v. California Supreme Court, 21 F.3d 359, 360 (9th Cir. 1994).

1  court erred in denying petitioner's motion for acquittal, and in failing to instruct the jury on the

2  theory of aiding and abetting, and claims he suffered ineffective assistance of counsel in violation

3  of the Sixth Amendment.  Petitioner was sentenced to seven years in state prison.  After careful

4  review of the record, this court concludes that the petition should be denied.

5  II.  Procedural History

6          On December 23, 2008, petitioner was charged with petty theft with a prior, a

7  felony, and fraudulent use of an access card, a misdemeanor.  It was further alleged that

8  petitioner suffered a prior serious felony conviction, within the meaning of California's Three

9  Strikes law, and served a prior prison term.  (Clerk's Transcript ("CT") at 1-3, 11, 24.)

10         On May 29, 2009, a jury convicted petitioner of both counts.  (CT at 127-30.)  In a

11 bifurcated proceeding, petitioner waived his right to a jury trial, and the trial court found true the

12 allegations of a prior conviction and prior prison term.  (CT at 151.)  On December 14, 2009,

13 petitioner was sentenced to an upper term of three years on count 1, doubled to six years under

14 Three Strikes, plus an additional year for the enhancement, for a total sentence of seven years.

15 (CT at 162, 185-91.)  Petitioner was sentenced to time served on count 2.  (CT at 186-91.)

16         Petitioner timely appealed to the California Court of Appeal, Third Appellate

17 District, and the conviction was affirmed on August 22, 2011.  (Respondent's Lodged Document

18 ("LD") No. 4.)  Petitioner did not file a petition for review in the California Supreme Court.

19         On October 17, 2011, petitioner filed a petition for writ of habeas corpus in the

20 California Supreme Court, raising the same claims petitioner raised on appeal.  (LD No. 5.)  The

21 California Supreme Court denied the habeas petition on February 15, 2012, citing In re Waltreus,

22 62 Cal. 2d 218, 225 (1965).  (LD 6.)

23         Petitioner filed the instant petition on February 24, 2012.  (Dkt. No. 1.)

24 ////

25 ////

26 ////

III.  Facts[3]

The opinion of the California Court of Appeal contains the following factual summary:

> On June 20, 2008, Mary Meisner inserted her debit card into the automated teller machine (ATM) at Washington Mutual Bank in Redding.  After typing in her access code, she made a deposit and then withdrew $100.  Two men, later identified as [petitioner] and Kao Saechao, were standing behind Meisner during her transactions.  Meisner walked out the bank's door, failing to retrieve her debit card which was still in the ATM.  She did not recall pushing the "no" button when prompted on the screen with the question whether she wanted another transaction.  Nor did she recall that her card had been ejected.  [Petitioner] and Kao immediately walked up to the ATM.  [Petitioner] looked at the screen and used the ATM keypad.  After withdrawing $300 from Meisner's account, [petitioner] and Kao left the bank.  Meisner did not know [petitioner] or Kao and did not give either permission to withdraw money from her account.  Kao, who had an account at the bank, did not use his debit card that day to withdraw money from his account.
>
> When Meisner balanced her checkbook, she discovered the $300 withdrawal posted on her account on June 20, realizing that she had left her debit card in the ATM.  She reported to the bank and law enforcement that there had been an unauthorized use of her debit card.  The bank canceled her debit card and advised that her card had also been used for a $46.01 transaction at a Circle K Store which Meisner had not done.
>
> The police obtained the bank's ATM surveillance photographs and officers identified [petitioner] and Kao.  The bank photographs were introduced at trial.
>
> On June 26, 2008, Redding Police Officer Robert Wilson interviewed Kao who had been arrested for an unrelated crime.  Kao was very apologetic and wanted to pay the money back.  He did not seem scared.  Kao explained that when he tried to put his debit card into the ATM the card would not go in and [petitioner] stepped up to help.  After the transaction, [petitioner] grabbed the debit card from the machine and they left.  In [petitioner's] car, [petitioner] and Kao discussed the debit card and the money taken from the ATM.  They discussed returning both but decided not to because they would get into trouble.  Kao never stated that he had

---

[3]  The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Saechao, No. C064006 (August 22, 2011), a copy of which was lodged by Respondent as Lodged Document No. 4 on July 19, 2012.

tossed the debit card out the window and into the neighbor's trash, contrary to his testimony at [petitioner's] trial.

On September 18, 2008 and again on September 22, 2008, Kao called Officer Wilson but never said that he had lied about [petitioner's] involvement during the June 26, 2008, interview. Kao told the officer that he had been unable to locate [petitioner] in order for the officer to interview him.

A fraud investigator for the bank explained at trial that an ATM would not accept a second debit card if a card was already in the machine. The machine would display a message asking whether another transaction was desired. The maximum amount that could be withdrawn from certain accounts was $400.

Kao testified at [petitioner's] trial. Kao and [petitioner] are cousins. About a week prior to the incident, Kao opened a savings and a checking account at Washington Mutual, depositing about $10 into each. On June 20, 2008, Kao went to the bank with [petitioner] to withdraw money from Kao's account. Kao had never used an ATM. Kao tried to insert his card but words "pop[ped] up." Kao put his card into his pocket. Kao never entered his personal identification number. Kao did not understand the words and asked [petitioner] for help. [Petitioner] asked how much Kao wanted to withdraw. Kao said he wanted $300, the maximum. [Petitioner] operated the ATM and $300 came out as well as the debit card. Kao claimed he took the money and card. Kao believed that $300 had come from his account because he had overdraft protection.

[Petitioner] and Kao went to Kao's home. After [petitioner] left, Kao checked his pocket and found two debit cards. Kao then realized that he had withdrawn money from someone else's account. Scared, Kao threw the debit card out the window and into the neighbor's trash. Kao denied using the Meisner's debit card at Circle K.

Kao denied telling the officer that [petitioner] took Meisner's card. But Kao also testified that he told the officer that [petitioner] must have the card because he (Kao) did not take it out of the machine. Kao stated that he was scared, having been arrested for something else, and lied to the officer because he did not want to get into more trouble. Kao also claimed he lied when he told the officer that he and [petitioner] spent the money on food and "stuff" at the mall. Kao claimed [petitioner] never handled the money or the card. Kao denied telling the officer that he and [petitioner] had discussed the card in [petitioner's] car. Kao claimed he lied when he told the officer that he and [petitioner] decided not to return the money or card because they would get into trouble. Kao later denied telling the officer any such thing. Kao admitted asking the officer during the interview and later in September whether he

1   could pay the money back.  Kao admitted that he never told the
2   officer that [petitioner] was not involved.  Kao testified that he had
    lied when he said otherwise to the officer.  Kao claimed he had
3   tried to tell the officer after the interview that he had lied.  Kao
    admitted that he never informed the prosecutor that [petitioner]
4   was not involved.  In January 2009, Kao told a defense investigator
    what really happened.

5       The parties stipulated that [petitioner] had a prior conviction for
6   theft of a firearm and had served a prison term for that conviction.

7       A defense investigator testified that on January 6, 2009, he spoke
    with Kao who came to the investigator's office.  Kao claimed he
8   was responsible for getting [petitioner] into trouble and gave the
    investigator the story Kao told at trial.  The investigator admitted
9   on cross-examination that the defense never informed the
    prosecutor of Kao's statements on January 6, 2009.

10  (People v. Saechao, slip op. at 2-5.)

11  IV.  Standards for a Writ of Habeas Corpus

12      An application for a writ of habeas corpus by a person in custody under a

13  judgment of a state court can be granted only for violations of the Constitution or laws of the

14  United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the

15  interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

16  Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

17      Federal habeas corpus relief is not available for any claim decided on the merits in

18  state court proceedings unless the state court's adjudication of the claim:

19      (1) resulted in a decision that was contrary to, or involved an
        unreasonable application of, clearly established Federal law, as
20      determined by the Supreme Court of the United States; or

21      (2) resulted in a decision that was based on an unreasonable
        determination of the facts in light of the evidence presented in the
22      State court proceeding.

23  28 U.S.C. § 2254(d).

24      Under section 2254(d)(1), a state court decision is "contrary to" clearly

25  established United States Supreme Court precedents if it applies a rule that contradicts the

26  governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

1    indistinguishable from a decision of the  Supreme Court and nevertheless arrives at different

2    result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-06

3    (2000)).

4           Under the  "unreasonable application" clause of section 2254(d)(1), a federal

5    habeas court may grant the writ if the state court identifies the correct governing legal principle

6    from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

7    prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

8    simply because that court concludes in its independent judgment that the relevant state-court

9    decision applied clearly established federal law erroneously or incorrectly.  Rather, that

10   application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75

11   (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

12   question, is left with a 'firm conviction' that the state court was 'erroneous.'") (internal citations

13   omitted).  "A state court's determination that a claim lacks merit precludes federal habeas relief

14   so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

15   Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

16          The court looks to the last reasoned state court decision as the basis for the state

17   court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  If there is no reasoned

18   decision, "and the state court has denied relief, it may be presumed that the state court

19   adjudicated the claim on the merits in the absence of any indication or state-law procedural

20   principles to the contrary."  Harrington, 131 S. Ct. at 784-85.  That presumption may be

21   overcome by a showing that "there is reason to think some other explanation for the state court's

22   decision is more likely."  Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

23          Where the state court reaches a decision on the merits but provides no reasoning

24   to support its conclusion, the federal court conducts an independent review of the record.

25   "Independent review of the record is not de novo review of the constitutional issue, but rather,

26   the only method by which we can determine whether a silent state court decision is objectively

1    unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  Where no reasoned

2    decision is available, the habeas petitioner has the burden of "showing there was no reasonable

3    basis for the state court to deny relief." Harrington, 131 S. Ct. at 784.  "[A] habeas court must

4    determine what arguments or theories supported or, . . . could have supported, the state court's

5    decision; and then it must ask whether it is possible fairminded jurists could disagree that those

6    arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at

7    786.

8    V.  Procedural Default

9            Petitioner raised the instant claims for the first time in his habeas petition filed in

10   the California Supreme Court.  (LD No. 5.)  Citing in re Waltreus, 62 Cal. 2d 218, 225 (1965),[4]

11   the California Supreme Court denied the petition without further comment.  (LD No. 6.)

12   Respondent argues that the ruling of the California Supreme Court constitutes a procedural bar

13   which precludes this court from addressing the merits of petitioner's claims.  (Dkt. No. 13 at 8.)

14           State courts may decline to review a claim based on a procedural default.

15   Wainwright v. Sykes, 433 U.S. 72, 81-82 (1977).  As a general rule, a federal habeas court "'will

16   not review a question of federal law decided by a state court if the decision of that court rests on

17   a state law ground that is independent of the federal question and adequate to support the

18   judgment.'" Calderon v. United States District Court (Bean), 96 F.3d 1126, 1129 (9th Cir. 1996)

19   (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)).  The state rule for these purposes is

20   only "adequate" if it is "firmly established and regularly followed." Id. (quoting Ford v.

21   Georgia, 498 U.S. 411, 424 (1991)).  See also Bennett v. Mueller, 322 F.3d 573, 583 (9th Cir.

22   2003) ("[t]o be deemed adequate, the state law ground for decision must be well-established and

23   consistently applied.")  The state rule must also be "independent" in that it is not "interwoven

24

25           [4]  In the context of this case, the citation to Waltreus stands for the proposition that in
     California, habeas corpus cannot serve as a second or substitute appeal.  In re Harris, 5 Cal. 4th
26   813, 829, 21 Cal. Rptr. 2d 373 (1993); Waltreus, 62 Cal.2d at 225.

1   with the federal law." Park, 202 F.3d at 1152 (quoting Michigan v. Long, 463 U.S. 1032, 1040-

2   41 (1983)).  Even if the state rule is independent and adequate, the claims may be reviewed by

3   the federal court if the petitioner can show:  (1) cause for the default and actual prejudice as a

4   result of the alleged violation of federal law; or (2) that failure to consider the claims will result

5   in a fundamental miscarriage of justice.  Coleman, 501 U.S. at 749-50.

6           A reviewing court need not invariably resolve the question of procedural default

7   prior to ruling on the merits of a claim where the default issue turns on difficult questions of state

8   law.  Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997); see also Busby v. Dretke, 359 F.3d

9   708, 720 (5th Cir. 2004).  Under the circumstances presented here, this court finds that

10  petitioner's claims can be resolved more easily by addressing them on the merits.  Accordingly,

11  this court will assume that petitioner's claims are not procedurally defaulted.

12  VI.  Petitioner's Claims

13          A.  Motion for Acquittal

14          Petitioner claims that the trial court erred in denying petitioner's motion for

15  acquittal, because he alleges there was insufficient evidence to corroborate[5] the statements made

16  by his alleged accomplice, Kao Saechao (hereafter "Kao"), and absent such corroboration, there

17  was insufficient evidence to demonstrate petitioner's guilt.  Respondent argues that petitioner's

18  claim is not cognizable on habeas review, but in any event lacks merit as petitioner was not

19  deprived of any constitutionally protected right when the trial court denied the motion.

20  _____

21          [5]  Pursuant to California law, a criminal conviction must be based on more than
    uncorroborated accomplice testimony.  Specifically, California Penal Code § 1111 provides, in
22  relevant part:

23          A conviction cannot be had upon the testimony of an accomplice
            unless it be corroborated by such other evidence as shall tend to
24          connect the defendant with the commission of the offense; and the
            corroboration is not sufficient if it merely shows the commission of
25          the offense or the circumstances thereof.

26  Id.

The last reasoned rejection of this claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal, addressed as follows:

> [Petitioner] contends that the trial court erroneously denied his motion for judgment of acquittal sought at the close of the prosecutor's case (§ 1118.1). FN1  We disagree.

> FN1. Section 1118.1 provides:

>> "In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal.  If such a motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without first having reserved that right."

> Background

> [Petitioner] asserted Kao's testimony was insufficient to prove petitioner's guilt.  The prosecutor claimed the statements Kao made during his interview with the police, which were admitted at trial and corroborated by the bank surveillance photos, constituted sufficient evidence to prove [petitioner's] guilt.

> In denying the motion, the trial court stated:

> "Well, I was looking for CALCRIM [No.] 318 and this case rests very heavily upon that impeachment evidence.  [¶]  That [instruction], 318, provides that, 'You've heard evidence of a statement that a witness made before the trial.  If you decide that the witness made those statements, you may use those statements in two ways.  One, to evaluate whether the witness's testimony in court is believable.  And two, as evidence that the information in those earlier statements is true.  [¶]  And it sounds like from [Officer] Wilson that Kao Saechao provided statements previously to the police department that could, by themselves, be the basis for a reasonable juror convicting in the case.  So, on that basis, I'll deny the 1118 .1 motion."

////

////

Analysis

[Petitioner] argues there was insufficient evidence to corroborate the statements of Kao who, [petitioner] now claims, was an accomplice as a matter of law.  [Petitioner's] argument on appeal lacks merit.FN2

> FN2. [Petitioner] did not argue in the trial court that Kao was an accomplice as a matter of law.  Instead, he argued [petitioner] was not an accomplice and was merely present at the bank.  [Petitioner] argued in the trial court that Kao's trial testimony was insufficient to show [petitioner] took the card and the money.  [Petitioner] directed the jury to an instruction that "mere presence at the scene of a crime is not a crime."

In ruling on a section 1118.1 motion, the trial court must decide whether "'the sufficiency of the evidence to support a conviction, that is, "whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged."'" (People v. Stevens (2007) 41 Cal.4th 182, 200.)

As applied to accomplice testimony, for purposes of a motion under section 1118.1, corroboration is required only when the witness is an accomplice as a matter of law.  (§ 1111; People v. Boyce (1980) 110 Cal.App.3d 726, 735-736 (Boyce).)  "Where the evidence is clear and uncontroverted, the court may determine as a matter of law that a witness is an accomplice, but where there are disputed facts or conflicting inferences, this question must be left to the jury to decide.  [Citation.]"  (Id. at p. 735; People v. Garceau (1993) 6 Cal.4th 140, 184; People v. Hoover (1974) 12 Cal.3d 875, 880.)

Here, there are disputed facts and conflicting inferences as to whether Kao was an accomplice.  There was evidence that Kao and [petitioner] committed the crimes together, both being principals.  And there was evidence, Kao's trial testimony, that exculpated [petitioner].  But there was evidence which, if believed by the jury, would support a finding that Kao was not an accomplice and, thus, his testimony did not require corroboration.  There was evidence that Kao did not use Meisner's debit card, did not take her debit card or money, and did not encourage or assist [petitioner] in doing so.  Bank surveillance photographs supported these inferences. Kao testified at trial that he had never used an ATM card and machine before and needed [petitioner's] help.  When interviewed shortly after the crimes, Kao claimed that [petitioner] took Meisner's card and that they (Kao and [petitioner]) discussed the money and card in [petitioner's] car after obtaining the same.  The jury could have determined Kao did not have the requisite intent

10

for theft under an accomplice theory of liability.  (See People v. Stankewitz (1990) 51 Cal.3d 72, 90-91, ["'an aider and abettor [must] act with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating the commission of, the offense'"], original italics; see also People v. Carrington (2009) 47 Cal.4th 145, 191.)  The evidence failed to establish the accomplice status of Kao as a matter of law because it was in dispute and subject to conflicting inferences.  Since the issue of his accomplice status remained a question of fact for the jury's determination, there was no requirement that Kao's statements to the police be corroborated at the close of the prosecution's case-in-chief.  (See People v. Garceau, *supra*, 6 Cal.4th at p. 184; Boyce, *supra*, 110 Cal.App.3d at pp. 735-737.)  The question of adequate corroboration was therefore properly left to the jury to determine as the trial court so instructed.FN3  The trial court did not err.

> FN3.  The court instructed the jury in the language of CALCRIM No. 334 (Accomplice Testimony Must be Corroborated:  Dispute Whether Witness is Accomplice) as follows:

> "Before you may consider the statements of Kao Saechao as evidence against the defendant, you must decide whether Kao Saechao was an accomplice.  A person is an accomplice if he or she is subject to prosecution for the identical crime charged against the defendant.  Someone is subject to prosecution if he or she personally committed the crime or if one, he or she knew of the criminal purpose of the [ ] person who committed the crime. And two, he or she intended to and did in fact aid, facilitate, promote, encourage or instigate the commission of the crime or participate in a criminal conspiracy to commit the crime.

> "The burden is on the defendant to prove that it is more likely than not that Kao Saechao was an accomplice.  If you decide that a witness was not an accomplice, then supporting evidence is not required and you should evaluate his or her statements as you would that of any other witness.

> "If you decide that a witness was an accomplice, then you may not convict the defendant of charged crimes based on his statements alone.  You may use the statements of an accomplice to convict the defendant only if, one, the accomplice's statements are supported by other evidence that you believe. Two, the supporting evidence is independent of the accomplice's statements. And three, that supporting

1           evidence tends to connect the defendant [ ] to the commission of the crimes.

2

3           "Supporting evidence, however, may be slight. It does not need to be enough by itself to prove that the defendant is guilty of the charged crimes and it does not need to support every fact mentioned by the accomplice in the statements.

4

5

6           "On the other hand, it is not enough if the supporting evidence merely shows that a crime was committed or the circumstances of its commission. The supporting evidence must tend to connect the defendant to the commission of the crime. Any statement[ ] of an accomplice that tend[s] to incriminate the defendant should be viewed with caution. You may not, however, arbitrarily disregard it.  You should give those statements the weight you think they deserve, after examining them with care and caution and in the light of all the other evidence."

7

8

9

10

11

12  (People v. Saechao, slip op. at 6-9.)

13          Petitioner argues that the trial court erred in denying petitioner's motion for

14  acquittal because the evidence presented during the prosecution's case-in-chief was insufficient

15  to support the convictions because Kao was an accomplice as a matter of law, and no adequate

16  independent corroboration was adduced by the prosecution.  However, as argued by respondent,

17  the Court of Appeals for the Ninth Circuit has concluded that a challenge to a motion for

18  acquittal fails to raise a cognizable federal habeas claim.  LaMere v. Slaughter, 458 F.3d 878,

19  881-82 (9th Cir. 2006).  The Ninth Circuit rejected petitioner's theory, stating:

20           Motions for directed verdict of acquittal have long been available in criminal cases, in both federal and state court. See, e.g., United States v. Calderon, 348 U.S. 160, 164 & n.1, 75 S.Ct. 186, 99 L.Ed. 202 (1954) (discussing federal procedure); Smith v. Massachusetts, 543 U.S. 462, 472, 125 S.Ct. 1129, 160 L.Ed.2d 914 (2005) (discussing state procedures).  But the United States Supreme Court has never suggested, let alone held, that in a case in which both sides have presented evidence a federal habeas court should confine its analysis to the evidence presented by the State during its case-in-chief.  For example, in Jackson [v. Virginia,], the case upon which LaMere principally relies, the Court evaluated all of the evidence presented in the case, not merely the evidence presented by the State.  443 U.S. [307], 324-26, 99 S.Ct. 2781 [(1979)].

21

22

23

24

25

26

1   LaMere, 458 F.3d at 882.  Therefore, petitioner's claim that the state court erred in denying the

2   motion for acquittal under California Penal Code § 1118.1 fails to state a cognizable federal

3   habeas claim.

4          Also, as noted by the state court, petitioner did not argue at trial that Kao was his

5   accomplice.  Petitioner raised this argument for the first time on direct appeal.  Because a federal

6   court may not issue the writ of habeas corpus on the basis of a perceived error of state law, the

7   issue of whether Kao was an accomplice, as that term is defined by state law,[6] is not cognizable

8   in this habeas corpus proceeding.  Lisenba v. California, 314 U.S. 219, 227 (1941) ("[t]he

9   Fourteenth Amendment does not forbid a state court to construe and apply its laws with respect

10  to the evidence of an accomplice").[7]

11         Moreover, although California law requires that accomplice testimony be

12  independently corroborated, in federal court "a conviction may be based on the uncorroborated

13  testimony of an accomplice."  United States v. Turner, 528 F.2d 143, 161 (9th Cir. 1975); see

14  also Caminetti v. United States, 242 U.S. 470, 495 (1917) ("there is no absolute rule of law

15  preventing convictions on the testimony of accomplices if juries believe them."); United States v.

16  _____

17      [6]  Under California law, when the evidence at trial warrants the jury concluding that a
    witness was an accomplice of the defendant, the trial court must instruct the jury to determine if

18  the witness was an accomplice.  People v. Hayes, 21 Cal. 4th 1211, 1270-71, 91 Cal. Rptr.2d 211
    (1999).  Whether a witness is an accomplice is a question of fact for the jury in all cases unless

19  there is no dispute as to either the facts or the inferences to be drawn therefrom.  Id. at 1271.  If
    the evidence establishes as a matter of law that the witness was an accomplice, the trial court

20  must so instruct the jury.  Id.  The failure to instruct pursuant to California Penal Code section
    1111 is harmless if there is sufficient corroborating evidence.  Id.  Corroborating evidence may

21  be slight, may be entirely circumstantial, and need not be sufficient to establish every element of
    the charged offense.  Id.

22      [7]  In any event, this court agrees that the issue of whether Kao was petitioner's
    accomplice was a question for the jury.  The California Court of Appeal carefully reviewed the

23  evidence and determined that the trial court properly left to the jury the question of whether Kao
    was an accomplice to the theft, because there were disputed facts and conflicting inferences that

24  precluded such a finding as a matter of law.  (People v. Saechao, slip op. at 9.)  The record
    supports this finding.  Thus, the question of whether Kao was petitioner's accomplice was a

25  question of fact left to the jury to decide.  The jury was properly instructed that it was their duty
    to determine whether Kao was petitioner's accomplice and, if so, that corroborating evidence was

26  required in order to find petitioner guilty.  (CT 84-85.)

1   <u>Necoechea</u>, 986 F.2d 1273, 1282 (9th Cir. 1993) ("The uncorroborated testimony of an

2   accomplice is enough to sustain a conviction unless it is incredible or insubstantial on its face").

3   California Penal Code § 1111, which requires corroboration of accomplice testimony, is a "state

4   law requirement" which is "not required by the Constitution or federal law." <u>Laboa v. Calderon</u>,

5   224 F. 3d 972, 979 (9th Cir. 2000); <u>see</u> <u>also</u> <u>Harrington v. Nix</u>, 983 F.2d 872, 874 (8th Cir. 1993)

6   ("[S]tate laws requiring corroboration do not implicate constitutional concerns that can be

7   addressed on habeas review."). Thus, petitioner's claim that uncorroborated accomplice

8   testimony was improperly used to support his conviction is not cognizable in this federal habeas

9   corpus proceeding.

10         Accordingly, petitioner is only entitled to habeas corpus relief if the state court's

11   alleged violation of state law denied him his due process right to fundamental fairness. <u>Laboa</u>,

12   224 F.3d at 979. "A State violates a criminal defendant's due process right to fundamental

13   fairness if it arbitrarily deprives the defendant of a state law entitlement." <u>Id.</u>, citing <u>Hicks v.</u>

14   <u>Oklahoma</u>, 447 U.S. 343, 346 (1980). Under California law, the corroborating evidence "need

15   not corroborate every fact to which the accomplice testified or establish the corpus delicti, but is

16   sufficient if it tends to connect the defendant with the crime in such a way as to satisfy the jury

17   that the accomplice is telling the truth." <u>People v. Fauber</u>, 2 Cal. 4th 792, 834, 9 Cal. Rptr. 2d 24

18   (1992).

19         Here, the trial court reviewed the evidence and found it linked petitioner to the

20   petty theft, in compliance with Cal. Penal Code § 1118.1. (Reporter's Transcript ("RT") 152.)

21   Surveillance photographs from the ATM, which are date and time-stamped, show petitioner, who

22   was identified by the tattoo on his right arm (RT 80), approach the ATM with Kao, but then

23   show petitioner stepping up to the ATM, arguably to assist Kao in the transaction. (LD No. 9,

24   time-stamp 5:16:33; 5:17:00.) Kao then steps away from the ATM, and petitioner remains at the

25   ATM. (<u>Id.</u>, time-stamp 5:17:01) Petitioner is in front of the ATM for at least 29 seconds. (<u>Id.</u>,

26   time-stamp 5:17:00-29) A few seconds later, petitioner returns to the ATM, where he remains

1   for a few more seconds.  (Id., time-stamp 5:17:35-45.)  The transactions report from the ATM

2   reflect a $100.00 withdrawal from the victim's account at 17:17, and a $300.00 withdrawal from

3   the victim's account at 17:18.  (LD 7.)

4           Fraud investigator Earl Wismer testified that the surveillance photos showed

5   petitioner manipulating the keypad of the ATM.  (RT 91.)  Wismer testified that if an ATM card

6   was already in the ATM, the ATM would not accept a second card.  (Id.)  Wismer explained the

7   transactions report.  (RT 93-98.)  Finally, Wismer testified that Kao had not used his own debit

8   card at all on the date the victim's account was accessed without her permission.  (RT 99-100.)

9           Police investigator Wilson testified that Kao told him that petitioner removed the

10  ATM card and the money.  (RT 141-42; 146.)  Kao told Wilson that Kao told petitioner to take

11  out the maximum amount possible.  (RT 134.)  Wilson testified that Kao stated that after they

12  returned to the car, petitioner and Kao talked about the fact that the money wasn't theirs, but

13  thought they would get in trouble if they returned to the bank and reported it.  (RT 143.)  Kao

14  told Wilson that he had asked petitioner for assistance because it was Kao's first time using an

15  ATM.  (Id.)  Wilson testified that Kao did not appear scared, but was apologetic and wanted to

16  pay the money back.  (RT 144; 148.)  Kao told Wilson that he tried to put the card in the ATM,

17  but it wouldn't go in, and petitioner stepped up to help Kao.  (RT 148-49.)

18          At trial, Kao testified that about a week before the theft, Kao went to the bank and

19  opened a savings and checking account, depositing about $10.00 into each account.  (RT 111.)

20  On the day of the theft, Kao asked petitioner to help Kao with the ATM transaction because it

21  was his first time using one.  (RT 113.)  Kao testified that he could not recall whether the ATM

22  took his card.  (RT 115.)  Kao took the card and the money, and testified that he didn't know it

23  was another person's card until later.  (RT 114-17.)  Although Kao's account only contained

24  around $10.00, Kao was hoping that the ATM would let him overdraft.  (RT 118-19.)  Kao

25  testified that petitioner used the keypad.  (RT 119.)   When Kao discovered another person's

26  debit card in his pocket, he tossed it out a window into the trash.  (RT 120.)  Kao testified he lied

to investigator Wilson because Kao was scared. (RT 121.) Kao testified that petitioner was not at fault, and knew nothing about it. (RT 123.) Despite talking to Wilson on September 18 and 22, petitioner did not inform Wilson that Kao had lied during the June 28, 2008 interview. (RT 125.)

Thus, the ATM evidence and Wismer's testimony were independent evidence, and this independent evidence, along with the inferences that could be drawn therefrom, were sufficient to tie petitioner to the crime. Petitioner does not argue that Kao's testimony was incredible or insubstantial on its face. Thus, there are no grounds upon which this court could conclude that petitioner was arbitrarily denied a state law entitlement.

Finally, to the extent petitioner argues that the evidence, as a whole, was insufficient to support his conviction, he is not entitled to relief. There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "[T]he dispositive question under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 318). A petitioner in a federal habeas corpus proceeding "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274, 1275 & n.13 (9th Cir. 2005). In order to grant the writ, the habeas court must find that the decision of the state court reflected an objectively unreasonable application of Jackson to the facts of the case. Id.

Viewing the evidence in the light most favorable to the verdicts, there was sufficient evidence introduced at petitioner's trial to support the jury's guilty findings. In resolving petitioner's jury instruction claim, the Court of Appeal found that there was substantial evidence to support petitioner's conviction as an actual perpetrator:

////

1  
2  
3  
4  
5  
6  

> Kao did not know how to use his debit card and asked [petitioner] for help with the ATM machine.  Kao's statements to the police and bank surveillance photographs showed that Kao stood at the ATM for a short time and could not get his debit card into the machine, and that [petitioner] then took over.  Kao's statements to police and bank surveillance photographs further showed that [petitioner] was the last person at the ATM keypad, used the debit card in the ATM, pushed the buttons, and retrieved Meisner's card from the ATM, and presumably, the cash as well.  Kao told police when interviewed that he and [petitioner] used the money on food and other items at the mall.

7  (People v. Saechao, slip op. at 11.)  As set forth above, the record reflects that Kao's testimony,

8  Kao's prior statements, Wismer's testimony, and the ATM evidence, and the inferences flowing

9  therefrom, were sufficient to support the jury verdicts in this case.

10          For all of the above reasons, petitioner's first claim for relief is denied.

11                   B.  Jury Instruction on Aiding and Abetting

12          Petitioner claims the trial court erred in failing to instruct the jury on a theory of

13  aiding and abetting.  Respondent contends that petitioner bases this claim solely on state law, and

14  therefore fails to state a cognizable habeas claim, but that in any event, the claim lacks merit.

15          The last reasoned rejection of this claim is the decision of the California Court of

16  Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed

17  this claim as follows:

18  
19  

> [Petitioner] contends the trial court erred in failing to instruct on the theory of aiding and abetting (CALCRIM Nos. 400 and 401).  We disagree.

20  
21  
22  
23  
24  

> "A court must instruct sua sponte on general principles of law that are closely and openly connected with the facts presented at trial.  [Citations.]"  (People v. Ervin (2000) 22 Cal.4th 48, 90.)  A trial court must instruct the jury on aider and abettor liability when the prosecution relies on it as a theory of liability.  (See People v. Beeman (1984) 35 Cal.3d 547, 550-551; People v. Sarkis (1990) 222 Cal.App.3d 23, 26-28.)  However, a sua sponte instruction is not required if it is not supported by substantial evidence.

25  
26  

> The prosecutor did not rely on the theory of aiding and abetting to demonstrate [petitioner's] culpability in the theft.  Instead, the prosecutor argued [petitioner] was the actual perpetrator and Kao

////

was an actual perpetrator as well or [petitioner's] accomplice. There is ample evidence to support the prosecutor's argument.

As the prosecutor argued, Kao did not know how to use his debit card and asked [petitioner] for help with the ATM machine. Kao's statements to the police and bank surveillance photographs showed that Kao stood at the ATM for a short time and could not get his debit card into the machine, and that [petitioner] then took over. Kao's statements to police and bank surveillance photographs further showed that [petitioner] was the last person at the ATM keypad, used the debit card in the ATM, pushed the buttons, and retrieved Meisner's card from the ATM, and presumably, the cash as well. Kao told police when interviewed that he and [petitioner] used the money on food and other items at the mall. The prosecutor argued to the jury that [petitioner] took Meisner's money without her consent, intending to deprive her of her money permanently, and that [petitioner] used Meisner's debit card which he acquired without her consent, knowing that he had so acquired her card and intending to defraud her of her money.

Defense counsel argued that Kao took the money and the debit card and blamed [petitioner], citing Kao's trial testimony. Defense counsel claimed [petitioner] was not an accomplice and did not encourage Kao, but was merely present at the bank, directing the jury to an instruction that "mere presence at the scene of a crime is not a crime." In the event the jury disagreed and concluded Kao was [petitioner's] accomplice, defense counsel argued that Kao's statements during the police interview should be viewed with caution.

The prosecutor did not proceed on an aiding and abetting theory and substantial evidence does not support such a theory. However, there is substantial evidence to support [petitioner's] conviction as an actual perpetrator. Accordingly, the trial court had no duty to instruct on aiding and abetting liability.

(People v. Saechao, slip op. at 10-12.)

The issue before this court is not whether the trial court's failure to give petitioner's requested jury instruction violated California law, but whether the trial court's failure to give the instruction violated petitioner's federal constitutional rights. "[F]ederal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990). In the context of this habeas petition, the court must determine whether the state court's decision rejecting this jury instruction claim was contrary to or an unreasonable application of United States Supreme Court authority.

1        In general, a challenge to jury instructions does not state a federal constitutional

2  claim.  Engle v. Isaac, 456 U.S. 107, 119 (1982)); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th

3  Cir. 1983).  In order to warrant federal habeas relief, a challenged jury instruction "cannot be

4  merely 'undesirable, erroneous, or even "universally condemned,'" but must violate some due

5  process right guaranteed by the fourteenth amendment." Cupp v. Naughten, 414 U.S. 141, 146

6  (1973).  To prevail on such a claim petitioner must demonstrate "that an erroneous instruction 'so

7  infected the entire trial that the resulting conviction violates due process.'" Prantil v. State of

8  Cal., 843 F.2d 314, 317 (9th Cir. 1988) (quoting Darnell v. Swinney, 823 F.2d 299, 301 (9th Cir.

9  1987)).  In making its determination, this court must evaluate the challenged jury instructions

10  "'in the context of the overall charge to the jury as a component of the entire trial process.'" Id.

11  (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir. 1984)).  Where, as here, the challenge is

12  to a refusal or failure to give an instruction, the petitioner's burden is "especially heavy," because

13  "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement

14  of the law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977); see also Villafuerte v. Stewart, 111

15  F.3d 616, 624 (9th Cir. 1997).

16        Here, the prosecution argued that either petitioner was the sole perpetrator, and

17  Kao was also a perpetrator, or that petitioner was the perpetrator and Kao was his accomplice.

18  Petitioner's defense attorney argued that Kao was the sole perpetrator, and petitioner was an

19  innocent bystander.  Thus, the California Court of Appeal properly concluded that there was no

20  duty to instruct the jury on a theory of aiding and abetting because the prosecution did not rely on

21  such a theory.  This conclusion is not unreasonable.

22        Moreover, although petitioner's jury was not specifically instructed on the theory

23  of aiding and abetting, the jury was instructed on the specific elements of petty theft with a prior

24  and fraudulent use of an access card.  These instructions required the jury to find that petitioner

25  took possession of property owned by someone else without the owner's consent, and with the

26  intention to deprive the owner of it permanently; and that petitioner used an access card without

permission, knowing it was acquired or retained without permission, while intending to defraud

the owner of the card.  (CT 87, 88.)  The jury was also instructed that the crimes charged required

"proof of the union, or joint operation, of act and wrongful intent:

> For you to find a person guilty of the crimes charged in this case, that person must not only intentionally commit the prohibited act or intentionally fail to do the required act, but must do so with a specific intent and/or mental state.  The act and the specific intent and/or mental state required are explained in the instruction for that crime.

(CT 77.)  In addition, the jury was instructed that the jury must decide whether Kao was an

accomplice and, if so, Kao's statements must be viewed with caution, and could not be used to

convict petitioner unless the jury also found:

> 1.  The accomplice's statements are supported by other evidence that you believe;
>
> 2.  That supporting evidence is independent of the accomplice's statements;
>
> AND
>
> 3.  That supporting evidence tends to connect the defendant to the commission of the crimes.

(CT 85.)[8]

Therefore, the above jury instructions precluded the jury from finding petitioner

guilty based solely on his "mere presence" at the crime scene.  Although these instructions do not

contain the identical language suggested by petitioner, they essentially gave the same message to

---

[8]  Interestingly, jury instruction CALCRIM 334 was modified by the trial court to remove the standard provision stating that:

> [An accomplice does not need to be present when the crime is committed.  On the other hand, a person is not an accomplice just because he or she is present at the scene of a crime, even if he or she knows that a crime will be committed or is being committed and does nothing to stop it.]

Id.; see CT 84.

1   the jury:  that the culpability of petitioner must be decided individually as to petitioner, and that

2   petitioner could not be found guilty unless the jury found true each element of each crime.

3   Moreover, if the jury found that Kao was petitioner's accomplice, the jury was properly

4   instructed that the jury could only convict petitioner if independent evidence corroborated Kao's

5   statements.  It is unclear from the verdict forms whether the jury found Kao was petitioner's

6   accomplice.  But whether or not the jury found Kao was petitioner's accomplice, the jury found,

7   beyond a reasonable doubt, that petitioner personally took the victim's $300 from the ATM

8   without her permission, and with the intent to permanently deprive her of the money, and that

9   petitioner personally used the victim's access card without her consent, and with the specific

10  intent to defraud the victim.

11          For all of these reasons, the trial court's failure to give aiding and abetting jury

12  instructions did not have a "substantial and injurious effect or influence in determining the jury's

13  verdict."  Brecht v. Abrahamson, 507 U.S. 619 (1993).  Accordingly, the state court's decision

14  was neither contrary to nor an unreasonable application of clearly established United States

15  Supreme Court jurisprudence, nor was it based on an unreasonable determination of the facts.

16  For that reason, petitioner's second claim for relief is denied.

17          C.  Alleged Ineffective Assistance of Counsel

18          Petitioner claims he suffered ineffective assistance of counsel in violation of the

19  Sixth Amendment because defense counsel failed to request that the jury be instructed on the

20  theory of aiding and abetting which included the provision that "mere presence at the scene of a

21  crime which does not itself assist the commission of the crime does not amount to aiding and

22  abetting."

23          Respondent argues that the state court reasonably concluded that defense

24  counsel's performance was not deficient because the evidence did not support an aiding and

25  abetting theory, and seeking such instructions would have exposed petitioner to yet another

26  ////

1    theory upon which the jury could find petitioner guilty.  Moreover, the instructions given to the

2    jury prohibited them finding petitioner guilty based solely on his mere presence at the ATM.

3                    The last reasoned rejection of this claim is the decision of the California Court of

4    Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed

5    this claim as follows:

6              [Petitioner] contends that defense counsel rendered ineffective
               assistance in failing to request jury instructions on aiding and
7              abetting (CALCRIM Nos. 400 and 401).  We disagree.

8              To establish ineffective assistance of counsel, [petitioner] must
               demonstrate that counsel's performance was deficient and that
9              [petitioner] suffered prejudice as a result.  (Strickland v.
               Washington (1984) 466 U.S. 668, 687-688, 691-692 [80 L.Ed.2d
10             674, 693, 696]; People v. Ledesma (1987) 43 Cal.3d 171, 216-218.)

11             [Petitioner] has failed to demonstrate that counsel's performance
               was deficient.  As previously discussed, the prosecutor's theory of
12             [petitioner's] culpability was as an actual perpetrator and did not
               include aiding and abetting.  Defense counsel's theory was that Kao
13             was solely responsible based on his trial testimony that [petitioner]
               was not involved or, in the alternative, if Kao was an accomplice,
14             his statements to the police should be viewed with caution.
               Substantial evidence did not support an aiding and abetting theory.
15             Under the circumstances, defense counsel's performance was not
               deficient in not requesting instructions not supported by the
16             evidence.  The jury concluded [petitioner] was the actual
               perpetrator and, thus, it necessarily rejected defense counsel's
17             argument that [petitioner] was merely present.

18   (People v. Saechao, slip op. at 12-13.)

19                   The Sixth Amendment guarantees the effective assistance of counsel.  The United

20   States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

21   Strickland, 466 U.S. at 668.  To support a claim of ineffective assistance of counsel, a petitioner

22   must first show that, considering all the circumstances, counsel's performance fell below an

23   objective standard of reasonableness.  Id. at 687-88.  After a petitioner identifies the acts or

24   omissions that are alleged not to have been the result of reasonable professional judgment, the

25   court must determine whether, in light of all the circumstances, the identified acts or omissions

26   were outside the wide range of professionally competent assistance.  Id. at 690; Wiggins v.

1  *Smith*, 539 U.S. 510, 521 (2003).  "We strongly presume that counsel's conduct was within the

2  wide range of reasonable assistance, and that he exercised acceptable professional judgment in all

3  significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing

4  Strickland, 466 U.S. at 689).

5  Second, a petitioner must affirmatively prove prejudice.  Strickland, 466 U.S. at

6  693.  Prejudice is found where "there is a reasonable probability that, but for counsel's

7  unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A

8  reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.

9  In Harrington v. Richter, the Supreme Court emphasized the application of

10  Strickland to ineffective assistance of counsel claims and its relationship to § 2254(d)'s

11  deferential standard of review.  Harrington v. Richter, 131 S. Ct. at 770.  "The pivotal question is

12  whether the state court's application of the *Strickland* standard was unreasonable[,]" which is a

13  different question from "asking whether defense counsel's performance fell below *Strickland's*

14  standard."  Harrington v. Richter, 131 S. Ct. at 785.

15  
> Establishing that a state court's application of *Strickland* was
> unreasonable under § 2254(d) is all the more difficult.  The
16  standards created by *Strickland* and § 2254(d) are both "highly
> deferential," . . . and when the two apply in tandem, review is
17  "doubly" so.  The *Strickland* standard is a general one, so the range
> of reasonable applications is substantial.  Federal habeas courts
18  must guard against the danger of equating unreasonableness under
> *Strickland* with unreasonableness under § 2254(d).  When
19  § 2254(d) applies, the question is not whether counsel's actions
> were reasonable.  The question is whether there is any reasonable
20  argument that counsel satisfied *Strickland's* deferential standard.

21  Harrington v. Richter, 131 S. Ct. at 788 (citations omitted).

22  Here, the state court did not unreasonably apply Strickland.  The California Court

23  of Appeal concluded that there was insufficient evidence to support an aiding and abetting

24  theory, and therefore defense counsel's failure to request additional instructions on aiding and

25  abetting was not prejudicial.  This conclusion is reasonable under the circumstances of this case.

26  Since a request for aiding and abetting jury instructions would not have been successful, trial

1  counsel was not ineffective in failing to make such a request.  Accordingly, the state court's

2  decision was neither contrary to nor an unreasonable application of clearly established United

3  States Supreme Court jurisprudence, nor was it based on an unreasonable determination of the

4  facts.  For that reason, petitioner's third claim for relief is denied.

5  VII.  Request for Evidentiary Hearing

6         In his traverse, petitioner requested an evidentiary hearing on petitioner's claims.

7  (Dkt. No. 18.)  The court concludes that no additional factual supplementation is necessary in

8  this case, and that an evidentiary hearing is not appropriate with respect to the claims raised in

9  the instant petition.  For the reasons described above, the facts alleged in support of these claims,

10  even if established at a hearing, would not entitle petitioner to federal habeas relief.  Further,

11  petitioner has not identified any concrete and material factual conflict that would require this

12  court to hold an evidentiary hearing in order to resolve.  See Cullen v. Pinholster, 131 S. Ct. 1388

13  (2011).[9]  Therefore, petitioner's request for an evidentiary hearing is denied.

14  VIII.  Certificate of Appealability

15         Before petitioner can appeal this decision, a certificate of appealability must issue.

16  28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  A certificate of appealability may issue under 28

17  U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a

18  constitutional right."  28 U.S.C. § 2253(c)(2).  The court must either issue a certificate of

19  appealability indicating which issues satisfy the required showing or must state the reasons why

20  such a certificate should not issue.  Fed. R. App. P. 22(b).

21         For the reasons set forth above, the undersigned finds that petitioner has not made

22  a showing of a substantial showing of the denial of a constitutional right.

23  ////

24

25  [9]  The Supreme Court has now held that federal habeas review under 28 U.S.C.
§ 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on
the merits" and "that evidence introduced in federal court has no bearing on" such review.
26  Cullen, 131 S. Ct. at 1398, 1400.

IV.  <u>Conclusion</u>

　　　　　For all of the above reasons, IT IS HEREBY ORDERED that:

　　　　　1.  Petitioner's October 11, 2012 request for an evidentiary hearing (dkt. no. 18) is denied;

　　　　　2.  Petitioner's application for a petition for writ of habeas corpus is denied; and

　　　　　3.  The court declines to issue the certificate of appealability referenced in 28 U.S.C. § 2253.

DATED:  October 23, 2012

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

saec0495.157

25